TIMOTHY C. FOX
Montana Attorney General
MELISSA SCHLICTING
ROB CAMERON
Deputy Attorneys General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
timfox@mt.gov

Attorneys for Intervenor State of Montana

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF MONTANA<br>    Plaintiff,<br><br>vs.<br><br>ATLANTIC RICHFIELD COMPANY,<br>    Defendant.<br><br>ATLANTIC RICHFIELD COMPANY,<br>    Defendant and Counterclaim<br>        Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA;<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al., | Case No. CV-89-39-BU-SEH<br><br>**STATE OF MONTANA'S BRIEF IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE** |

1

## INTRODUCTION

The State of Montana, through the Montana Governor's Office, the Department of Environmental Quality ("DEQ") and the Montana Natural Resource Damage Program ("NRDP"), has been engaged in settlement negotiations with the United States, Atlantic Richfield Company ("Atlantic Richfield"), and Butte-Silver Bow (collectively, the "Parties") under the settlement framework established and ordered in the Streamside Tailings Consent Decree, entered on April 19, 1999, for the Butte Priority Soils Operable Unit ("BPSOU"), which includes inactive portions of the historic mining district on Butte Hill and portions of the City of Butte. The BPSOU is part of the Silver Bow Creek/Butte Area National Priorities List Site. The BPSOU is one of the operable units at issue in this case under the Fifth Amended Complaint which sets forth the United States' claims for relief under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675.

In June 2002, the State of Montana signed its consent to be bound by the confidentiality orders entered in this case, and the State has participated in extensive negotiations subsequently, which have resulted in the consent decree that has been lodged with this court concurrently with this motion to

intervene.

The proposed consent decree required the State, through DEQ, to perform a portion of the remedial action along and within Blacktail Creek that Atlantic Richfield would otherwise be required to perform. Atlantic Richfield must pay the State $20.5 million under the proposed consent decree. The proposed consent decree includes various requirements that are binding on DEQ and for which this Court would retain jurisdiction. Further, Atlantic Richfield has reserved certain limited claims, defenses, and causes of action against the State related to the State's Parrot Tailings Waste Removal Project, as outlined in Paragraph 96 of the proposed consent decree. In order to effectuate this Court's jurisdiction over this reservation, Atlantic Richfield has requested that the State waive its sovereign immunity by moving to intervene in this action and signing the proposed consent decree as a party.

## ARGUMENT

The State of Montana's standing to intervene of right under Rule 24(a) is clear. Its motion is timely; Montana has significantly protectable interests relating to the subject proposed Consent Decree and the substantial environmental and economic benefits rising therefrom. Specifically, as outlined in the Streamside Tailings Consent Decree, entered on April 19, 1999, the State reserved all rights against Atlantic Richfield and the United States for liability for response costs and

injunctive relief under CERCLA Sections 106 and 107, RCRA Section 7003 or parallel provisions of State law, arising from the past, present, or future disposal, release, or threat of release of Hazardous or Deleterious Substances outside the Streamside Tailings Operable Unit. This BPSOU Consent decree addresses the State's reservations as to the Butte Priority Soils Operable Unit. The implementation of the terms of the Consent Decree will substantially facilitate Montana's ability to protect its economic and environmental interests. No other party has the same stake in the outcome as applied to Montana as a whole; therefore, it is possible Montana's interests may not be adequately represented by existing parties. In the alternative, Montana requests the Court to permit intervention under Rule 24(b).

The State of Montana does not request relief different from that which is sought by the Defendants; therefore, Montana need not demonstrate independent Article III standing. *See Oregon Prescription Drug Monitoring Program v. United States DEA*, 860 F.3d 1228, 1234 (9th Cir. 2017).

**I.     Montana is entitled to intervene of right under Rule 24(a)(2).**

To determine whether a party may intervene as of right, the Ninth Circuit employs a four-part test: (1) the motion must be timely; (2) the applicant must claim a "significantly protectable interest" in the action; (3) the disposition of the action must, as a practical matter, impair or impede the applicant's ability to

4

protect that interest; and (4) the applicant's interest may be inadequately represented by the other parties. *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1067 (9th Cir. 2018) (citing *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc).

The Ninth Circuit maintains a liberal policy in favor of intervention. *Wilderness Soc'y* at 1179. Such a policy allows for "both efficient resolution of issues and broadened access to the courts." *Id.* (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002)). It follows that if Fed. R. Civ. P. 24(a) is to be "construed broadly in favor of intervention, the four-part test should also be construed broadly." *Wildlands CPR Inc. v. United States Forest Service*, CV 10-104-M-DWM, 2011 WL 578696 (D. Mont. 2011).

In evaluating whether the requirements are met, courts are "guided primarily by practical considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001). As the Ninth Circuit has explained:

> A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts. By allowing parties with a practical interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, [they] allow an additional interested party to express its views before the court.

*United States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002).

Here, the State of Montana meets all four parts of the test and is entitled to

5

intervene as of right.

### A.    Montana's Motion to Intervene is timely.

Whether a motion to intervene—permissive or otherwise—is considered timely is ultimately up to the discretion of the court. *NAACP v. New York*, 413 U.S. 345, 366 (1973) ("Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."). In the Ninth Circuit, "[t]imeliness is measured by reference to '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for the length of the delay.'" *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) citing *County of Orange v. Air Calif.*, 799 F.2d 535, 537 (9th Cir. 1986).

Here, the existing parties and the State of Montana have very recently negotiated the terms and conditions of a Consent Decree which, if entered, will resolve a significant portion of this case (including certain claims by the State under CERCLA and Montana Comprehensive Environmental Cleanup and Responsibility Act (CECRA), Mont. Code Ann. 75-10-701 through 752, reserved in the Streamside Tailings Consent Decree), and more importantly, facilitate completion of vitally important environmental remediation in Butte-Silver Bow. With respect to delay, Montana has been monitoring this case since its inception.

The State's intervention prior to the successful negotiation of the Consent Decree would have been premature. As the stipulation of other parties reflects, no other party would be prejudiced by intervention. On the contrary, the State's intervention is necessary to vest the Court with jurisdiction over the State of Montana with respect to enforcement or interpretation of the Consent Decree – a vitally important issue to existing parties. Indeed, because intervention will subject the State to the Court's jurisdiction, other parties would be prejudiced by denial of intervention.

Timeliness is thus conclusively established.

### B. Montana has a "significantly protectable interest" relating to much of the property at issue in this action.

Whether an applicant has a "significantly protectable interest" necessary for intervention depends on: (i) whether the interest is protectable under some law; and (ii) whether there is a relationship between the legally protected interest and the claims at issue. *Wilderness Soc.*, 630 F.3d at 1179. The two prongs of the "significantly protectable interest" test are closely related because an applicant "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006). "Although an applicant cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the

7

litigation." *City of Emeryville v. Robinson*, 621 F.3d 1251, 1259 (9th Cir. 2010) (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)).

Here, the lodged Consent Decree proposes a methodology to waive certain Applicable or Relevant and Appropriate Requirements (ARARs). Namely, EPA may waive certain State surface water standards and replace those State standards with protective federal water quality standards if: (1) the settling defendants implement and maintain the technically practicable remedial elements outlined in the Consent Decree, and (2) the surface water nevertheless fails to meet the state surface water quality standards. Essentially, the EPA seeks to grant waiver of certain ARARs based on the technical impracticability of meeting those ARARs.

The State's interest in intervention clearly meet both prongs of a significantly protectible interest. One of the two threshold criteria that a remedy must meet is its ability to meet ARARs, absent an appropriate waiver of an ARAR such as a waiver based on technical impracticability.[1] 40 CFR 300.430(e)(9)(iii)(B), and (f)(1)(ii)(C). The Consent Decree lodged with this court contemplates that Atlantic Richfield will perform the technically practicable remedy for BPSOU, part of which includes the settlement payment to the State such that the State can conduct remedial activities within Blacktail Creek (defined in the Consent Decree at Blacktail Creek Riparian Actions). The State views

---

[1] The other threshold criteria for a remedy under CERCLA is that the remedy is protective of human health and the environment. 40 CFR 300.430(e)(9)(iii)(A).

8

performance of the Blacktail Creek Riparian Actions (and the settlement funds to enable the State to satisfactorily do that work) as a necessary component to the State's concurrence with the waivers due to technical impracticability outlined above, and more fully outlined in the Consent Decree and its attachments.

Further, funds not required by the State to complete the Blacktail Creek Riparian Actions can then be used for other State restoration actions coordinated with the remedy and certain end land use actions.[2] The use of remainder funds for these additional elements are vital to the State's interest in providing a robust, practicable cleanup for the community of Butte, and protection of the downstream watershed, much of which has already addressed by prior remedial actions.

Without the guarantees for work and settlement payments outlined in the CD, the State would need to seek alternate legal options to guarantee a robust remedy for the community and the watershed (*e.g.* bring a separate claim against potentially liable parties in under CECRA, intervene as a matter of right pursuant to CERCLA (Section 121(f)(2)(B)) in the present proceeding to argue that all ARARs must be met).

---

[2] Briefly, these are actions that are either (1) outlined in the State Natural Resource Damages Program Butte Area One Restoration Plan, including the Parrot Tailings Waste Removal, or (2) specific End Land Use Additions outlined in Addendum 1 to Attachment C of the CD, Further Remedial Elements Scope of Work that the State has committed to fund (i.e., grading, revegetating, paving, and appropriate stormwater best management practices in the Parrot Tailings Waste Removal Project area, as outlined in a separate February 20, 2018, agreement between BSB and the State; fishing amenities in the Blacktail Creek area; and partial State funding in an interest bearing account to support a portion of the future costs for feasibility assessment, design and/or construction of a lined creek at Silver Bow Creek above its confluence with Blacktail Creek).

9

The State's significantly protectable interest of ensuring a robust cleanup necessitates the State's intervention here.

### C. Montana is so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest.

A proposed intervenor need only demonstrate that the outcome of litigation "may" "impair or impede" its legally protectable interests, not that impairment is certain to occur. Fed. R. Civ. P. 24(a)(2); *United States v. City of Los Angeles, Cal.*, 288 F.3d 391 (9th Cir. 2002). Here, Montana's participation as a party, particularly to the Consent Decree, is essential for protection of Montana's interests.

The Consent Decree will, among other things, govern the implementation of the surface water remedy. The protection and remedy of State waters is a central interest to the State, and the State's participation in this Consent Decree ensures that those interests are protected. In general, the State alleges that hazardous substances have been released into the environment since the 1860s as a result of mining, milling, mineral processing, and related activities centered in Butte and Anaconda, Montana. Atlantic Richfield remains legally responsible for these releases under CERCLA and CECRA by virtue, inter alia, of its own actions and assumptions of liabilities of its alleged predecessor-in-interest, including the Anaconda Copper Mining Company and the Amalgamated Copper Mining

Company. Such claims are covered by the State's reserved rights under the Streamside Tailings Consent Decree. The State's intent is to resolve those reserved claims, insofar as liability at BPSOU is concerned, with the entry of the BPSOU Consent Decree. The satisfaction of these reservations, however, is predicated on the terms of the BPSOU Consent Decree being implemented, including the funding from Atlantic Richfield for the State to conduct the Blacktail Creek Riparian Actions, as well as the ability to use the remainders of the settlement dollars to fund restoration and other activities within BPSOU, for the benefit of the community and watershed.

### D.  Montana's interests will not be adequately represented by the existing parties.

The fourth requirement of Fed. R. Civ. P. 24(a)(2)—that Montana's interests are not adequately represented by an existing party—is satisfied if Montana can demonstrate that the representation of its interests "may be" inadequate. *See Citizens for Balanced Use*, 647 F.3d at 898 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "[T]he burden of showing inadequacy is 'minimal.'" *Southwest Ctr. for Biological Diversity*, 268 F.3d at 822-23 (citations omitted).

In determining the adequacy of representation, the Court examines three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed

11

intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Id. quoting Arakaki*, 324 F.3d at 1086. Montana meets this minimal burden.

The current parties cannot adequately represent Montana's sovereign interests. Here, federal litigants have no duty to represent the personal or economic interests of a single group or state. *See Forest Conservation Council v. United States Forest Serv.*, 66 F3d 1489, 1499 (9th Cir. 1995) (The federal government is required to represent a broader view than the more narrow interests of a proposed state or county intervenor), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173, 1177-78, 1180. Thus, federal parties cannot adequately represent the interests of Montana. Likewise, the interests of Atlantic Richfield are not aligned with those of the State of Montana. Atlantic Richfield does not represent the State interests here.

Montana has met its minimal burden for intervention and is thus entitled to intervention as of right.

## II. Montana meets the requirements for permissive intervention.

If the Court denies Montana's request to intervene as of right, the State respectfully requests, in the alternative, to be allowed to intervene permissively under Fed. R. Civ. P. 24(b). The Court may grant permissive intervention pursuant to Rule 24(b)(1) when an applicant for intervention shows: (1) independent grounds for jurisdiction; (2) the motion is timely, and (3) the applicant's claim or

defense and the main action have a question of law or fact in common. *See* Fed. R. Civ. P. 24(b)(1); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1109-1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173, 1177-78, 1180; *see also Friends of the Wild Swan, et al. v. Jewell, U.S. Fish and Wildlife Service, et al.*, Case No. CV-13-61-M-DWM, (D. Mont. July 1, 2013) [Doc. 16] (granting permissive intervention to State agencies).

First, Montana need not establish independent grounds for jurisdiction because federal-question jurisdiction under 28 U.S.C. § 1331 is established, and Montana raises no new claims. *See Freedom From Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843-844 (9th Cir. 2011) ("We therefore clarify that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims.").

Second, as explained above, the State's motion is timely because it is at an early stage of the proceedings. *See Fund for Animals v. Norton*, 322 F.3d 728, 735 (9th Cir. 2003).

Third, the commonality requirement of Rule 24(b)(1)(B) "does not specify any particular interest that will suffice for permissive intervention," and "it plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Kootenai Tribe of Idaho*, 313

F.3d at 1108), (quoting 7C Wright, Miller & Kane, *Federal Practice and Procedure* § 1911, 357-63 (2d. ed. 1986)). The Consent Decree, among other things, resolves State claims against Atlantic Richfield, reserved in the Streamside Tailings Consent Decree. These include claims under CERCLA, and the State superfund law CECRA. Additionally, the Consent Decree outlines how remedy will be fully implemented and maintained within BPSOU. The State's role, as both a regulatory agency over the work (CERCLA work by responsible parties such as Atlantic Richfield is reviewed/approved by EPA, in consultation with DEQ), 40 CFR 300.515, as well as a party performing work, clearly satisfies this third element of commonality. Montana thus holds a legally protectable interest directly relating to the subject of the action and, thus, easily meets the "common question of law and fact" requirement for permissive intervention.

Finally, in exercising its discretion to allow permissive intervention (Fed. R. Civ. P. 24(b)), a court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3); *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. Cal. Nov. 19, 2009) ("Rule 24(b)(3) also requires that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" (quoting Fed. R. Civ. P. 24(b)(3)). Montana's motion is timely and will not prejudice any party or cause undue delay. No existing

14

party objects to Montana's motion.

Accordingly, Montana's participation will not unduly delay the case or prejudice the original parties.

## CONCLUSION

For the reasons stated herein, the Attorney General requests that the Court grant the State of Montana leave to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) or, in the alternative, permissively under Fed. R. Civ. P. 24(b).

Respectfully submitted this 8th day of June, 2020.

*/s/ Rob Cameron*

Rob Cameron
Deputy Attorney General
Attorney for State of Montana

# CERTIFICATE OF COMPLIANCE WITH UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA LOCAL RULES OF PROCEDURE, RULE 7.1(d)(2)

The foregoing brief is proportionately spaced, using 14-point Times New Roman. The word count of 3,249 is based on information provided by the Microsoft Word processing program and therefore does not exceed the limits provided by Rule 7.1(d)(2), Montana Rules of Court.

I certify that the foregoing is true and correct.

Respectfully submitted this 8th day of June, 2020.

_____
Rob Cameron
Deputy Attorney General
Attorney for State of Montana

2